**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 15-cv-02018-MSK-MJW

**ABDULLAHI HAMU JARA,**

    Plaintiff,

v.

**STANDARD PARKING; and
UNION TEAMSTER LOCAL 455,**

    Defendants.

---

**ORDER ADOPTING RECOMMENDATION TO GRANT MOTIONS TO DISMISS**

---

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Objection **(# 120)** to the Magistrate Judge's November 14, 2016 Recommendation **(# 116)** that the Defendant Teamster Local Union No. 455's Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim **(# 80)** and the Defendant Standard Parking's Motion to Dismiss Plaintiff's Second Amended Complaint **(# 82)** be granted.

**JURISDICTION**

The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

**FACTUAL ALLEGATIONS**

The Plaintiff, Mr. Jara, who appears *pro se*,[1] is Black, ethnically is an Oromo from

---

[1] In considering Mr. Jara's filings, the Court is mindful of his *pro se* status, and accordingly, reads his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Mr. Jara of the duty to comply with the

1

Ethiopia, and is a Muslim.   He worked for the Defendant Standard Parking ("Standard") as a cashier and also belonged to the Defendant Teamster Local Union 455 ("Union"). The Second Amended Complaint alleges that Standard did not pay Mr. Jara what he believed he was entitled to receive, did not allow him to work overtime, disciplined him several times, and ultimately terminated his employment on May 27, 2014. Even though he filed multiple grievances with the Union against Standard, the Union ultimately did not pursue or withdrew each of them. Mr. Jara believes that Standard's and the Union's actions were motivated by his race, ethnicity, and religion.

Mr. Jara's troubles with Standard began in 2012. After reviewing Standard's handbook, he believed that he was entitled to more money than he was being paid. He frequently complained to Standard's human resources about his deficient pay. Instead of increasing his wage, on March 12, 2014, Standard warned him to stop complaining to human resources.

Mr. Jara also experienced problems with his desire to work overtime. In March 2013, he asked to work overtime. His supervisor, Samuel Gebremichael, who is also Ethiopian, denied his request, and instead allowed another employee of Ethopian decent to work the overtime. In June 2013, Mr. Jara arrived to work an overtime shift but was sent home after Mr. Gebremichael gave the shift to an employee with less seniority. Mr. Jara complained to Standard's human resources department that Mr. Gebremichael discriminated against him, but the company did not take any action. He filed grievances with the Union for both instances, but the Union did not pursue them.

After complaining to Standard and the Union about not being able to work overtime, Mr.

---

various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat Mr. Jara according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

Jara was sent home by Mr. Gebremichael for sleeping on the job. Mr. Jara says that he was not sleeping and that Mr. Gebremichael retaliated against him for complaining to Standard's human resources and the Union about denial of his overtime requests.

On October 22, 2013, Mr. Jara says that Mr. Gebremichael made additional false accusations against him—that Mr. Jara was not at his work station and that Mr. Jara refused to do a car count after being ordered to do so. Such accusations resulted in Mr. Jara being suspended for three days. Again, Mr. Jara filed a grievance with the Union about the false accusations, but the Union did not pursue it.

Mr. Jara filed a complaint with the Union against the Union's representative, Jesse Medina, on October 28, 2013. He claimed that Mr. Medina was not doing his job and needed to be replaced. But the Union did not take action against Mr. Medina.

On May 18, 2014, Mr. Jara had a disagreement with another Standard supervisor, Maxwell Duah, who is from Ghana. Mr. Duah told Mr. Jara to close out his work station, but Mr. Jara believed that doing so violated Standard's policies. As a result of the dispute, Mr. Jara took $200 from his work station with him while he attended to a customer. Mr. Jara inadvertently left the $200 in the customer's car, but the customer returned it to Standard. On May 27, 2014, Standard terminated his employment for failing to follow Mr. Duah's orders.

Mr. Jara filed a grievance with the Union for termination of his employment. On behalf of the Union, Mr. Medina investigated and interviewed Mr. Duah about his disagreement with Mr. Jara. On October 2, 2014, the Union decided to withdraw support for Mr. Jara's grievance.

Based on these events, on Mr. Jara filed a complaint with the National Labor Relations Board ("NLRB"), and on June 16, 2015, he filed a charge of discrimination against Standard with the Equal Employment Opportunity Commission ("EEOC"). On September 14, 2015, he also filed

a charge of discrimination with the EEOC against the Union.

On September 15, 2015, Mr. Jara filed his Complaint **(# 1),** then filed a First Amended Complaint **(# 7)**. With leave of Court, Mr. Jara thereafter filed a Second Amended Complaint **(#78)**. In the Second Amended Complaint, Mr. Jara claims that he was terminated on the basis of his race, ethnicity, and religion in violation of Title VII. He also claims that Standard and the Union interfered with his rights under his employment contract with Standard on the basis of his race in violation of 42 U.S.C. § 1981 ("Section 1981").

Standard and the Union have each moved to dismiss **(# 80 & # 82)** Mr. Jara's claims against them under Federal Rule of Civil Procedure 12(b)(6). The Court referred the Motions to Dismiss to the Magistrate Judge who recommended that they be granted. **(# 116).** Mr. Jara timely filed Objections to Magistrate Judge's Report and Recommendations **(# 120)**. He argues that (1) his late filing of EEOC charges should not bar his claims because the filing period should be equitably tolled; and (2) the allegations in the Second Amended Complaint are sufficient to state a plausible race discrimination claim against Standard and the Union.

### A. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b), the Court reviews the objected-to portions of the Recommendation *de novo*.

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all well-pleaded allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court limits its consideration to the four corners of the Complaint, any documents attached thereto, and any external documents that are referenced in the Complaint and

whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal unless it is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79. The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" as compared to merely being "conceivable" or "possible". What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," are not sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

**B. Title VII Claims against the Union and Standard**

The Union[2] and Standard both argue that Mr. Jara's Title VII discrimination claims are barred due to Mr. Jara's failure to timely file his charges of discrimination with the EEOC. The assertion that a plaintiff's Title VII claims must be dismissed because he filed a charge of discrimination with the EEOC after the statutory deadline has passed is an affirmative defense. *DeWalt v. Meredith Corp.*, 288 Fed. Appx. 484, 490 (10th Cir. 2008). An affirmative defense may be raised under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim "[i]f the defense appears plainly on the face of the complaint itself." *Miller v. Shell Oil Co.*, 345 F.2d 891,

---

[2]It is unclear whether the Union qualifies as an employer subject to this type of claim. Assuming that it is an employer, Mr. Jara concedes that the EEOC charge was untimely filed.

893 (10th Cir. 1965). Mr. Jara does not dispute that the Second Amended Complaint plainly shows that he filed his charges of discrimination against Standard and the Union with the EEOC too late.

However, Mr. Jara argues his claims are not barred by the untimely filing of EEOC complaints due to application of the equitable tolling doctrine. Within 180 days[3] after a defendant engages in conduct in violation of Title VII, a plaintiff must file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1). This requirement operates like a statute of limitations, and as such, it is subject to the doctrine of equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392 (1982). Equitable tolling excuses an untimely filing of a charge of discrimination, only if the late filing is due to deception by the defendant. *See Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1269 (10th Cir. 1996).

The Second Amended Complaint contains no allegations that Standard or the Union deceived Mr. Jara with regard to the filing of his EEOC charges. It says nothing about why the filings were delayed. In his Objection,[4] however, he says that he delayed in filing EEOC charges because he had filed a complaint with the NLRB and he did not know that he also needed to file charges with the EEOC. Absent an allegation of deception by Standard or the Union, there are no grounds to equitably toll the deadline by which Mr. Jara was required to file charges with the EEOC. Therefore, the Court agrees with the Magistrate Judge that Mr. Jara's claims under Title

---

[3] If a plaintiff first complains of the discrimination to a State or local agency, this deadline is extended to the earlier of 30 days after the agency renders a decision or 300 days after the alleged discrimination occurred. 42 U.S.C. § 2000e-5(e)(1).

[4] The Court ordinarily does not consider matters outside the pleadings on a motion to dismiss under Rule 12(b)(6). However, the Court deems Mr. Jara's reason for not filing charges with the EEOC contained in the Objection as a proffer of how he would amend the Second Amended Complaint to address its facial deficiencies as to the timeliness of his EEOC complaints. Inasmuch as his proffer is not sufficient to show that his claims are not barred due to application of the equitable tolling doctrine, it would be futile to allow him to amend his complaint a third time in an effort to withstand dismissal of his Title VII claims.

VII against Standard and the Union must be dismissed.

### C. Mr. Jara's Claims under Section 1981

Standard and the Union further argue that Mr. Jara's Section 1981 racial discrimination claims should be dismissed because they were sufficiently pled. Section 1981 prohibits discrimination on the basis of race in an employment context. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001). To state a claim under Section 1981, Mr. Jara must sufficiently allege that (i) he belongs to a protected class, (ii) the Defendants had the intent to discriminate on the basis of race, and (iii) the discrimination interfered with the making, performance, modification, or termination of contracts, or the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. *See id*.

The Second Amended Complaint alleges that Mr. Jara is Black and that he believes Standard and the Union discriminated against him on the basis of his race. No other factual allegations regarding racial discrimination are found in Second Amended Complaint. There are a multitude of reasons that an employer or a labor union might act unfavorably toward an employee. Many such actions could be innocent. A plaintiff's subjective beliefs, standing alone, are insufficient to make a showing of race-based discrimination. *See Roemer v. Pub. Serv. Co.*, 911 F. Supp 464, 469 (D. Colo. 1996). In the absence of other allegations, such as statements or conduct that would support an inference of race-based discrimination, the claim is not adequately pled. Thus, the Court agrees with the Magistrate Judge that these claims must be dismissed.

### D. Other Potential Claims

Inasmuch as Mr. Jara is appearing *pro se*, the Court has also reviewed the Second Amended Complaint to determine if it is sufficient to state claims under other theories that do not require a showing of discrimination based on race, ethnicity, or religion. The only other cognizable

claim the Court has identified is a potential claim under section 301 of the Labor Management Relations Act ("Section 301"). However, the allegations in the Second Amended Complaint are insufficient to state such a claim.

Generally, an employee who is a member of a labor union cannot bring a claim against his employer or union for violations of a collective bargaining in state or federal court. *Webb v. ABF Freight System, Inc.*, 155 F.3d 1230, 1238 (10th Cir. 1998). Rather, he must submit to arbitration. *Id*. However, if the union fails to fairly represent him in an employment dispute with his employer, the employee may bring a lawsuit against both the union and the employer. *Id*. These are considered "hybrid" lawsuits because they combine two causes of action: an action against the employer under Section 301 for violation of the collective bargaining agreement and an action against the union for breaching its duty of fair representation. *Id*. To state a hybrid Section 301 claim, Mr. Jara must sufficiently allege the following three elements: (1) Some conduct by the worker's union that breached the duty of fair representation; (2) A causal connection showing that the union's breach affected the integrity of the arbitration process, and; (3) A violation of the collective bargaining agreement by the company. *Id*. at 1239.

Mr. Jara has not sufficiently alleged that the Union breached the duty of fair representation. A union breaches the duty of fair representation by representing an employee in a grievance or arbitration "in a discriminatory, dishonest, arbitrary, or perfunctory fashion." *Id*. (internal quotations omitted). Although Mr. Jara alleges that the Union withdrew his grievances against Standard, he does not make any allegations to show that it acted in a discriminatory, arbitrary, or perfunctory fashion. In fact, his allegations reflect that the Union, through Mr. Medina, actually investigated the grievance Mr. Jara filed after Standard terminated his employment.

Further, Mr. Jara has not sufficiently alleged that Standard breached the collective

8

bargaining agreement. The Second Amended Complaint cites to various sections of the collective bargaining agreement and asserts that they were violated, but it does not state what those provisions are. Without stating the provisions, any allegation that they were violated is conclusory and insufficient to state a claim.

Finally, Mr. Jara's hybrid claim under Section 301 would by barred by the statute of limitations. Within this context, Mr. Jara's hybrid claim under Section 301 must have been filed within six months of when he learned or should have learned that the Union decided to withdraw his grievance. *See Edwards v. Int'l Union*, 46 F.3d 1047, 1053-54 (10th Cir. 1995). The Union decided to withdraw Mr. Jara's last grievance on October 3, 2014. Mr. Jara did not file his complaint until September 15, 2015, more than eleven months later.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Mr. Jara's Objection **(# 120)** and **ADOPTS** the Magistrate Judge's November 11, 2016 Recommendation **(# 116)**. Standard's and the Union's Motions to Dismiss **(# 80 & # 82)** are **GRANTED** and no other viable claims are found. Accordingly, all claims against the Defendants are **DISMISSED**. The Clerk of Court shall close this case.

DATED this 22 day of December, 2016.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Chief United States District Judge